UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

TONY L. KEARNEY,

        Plaintiff,

        v.                                             Case No. 05-C-0834

MILWAUKEE COUNTY,
DAVID A. CLARKE, JR.,
MARK A. STRACHOTA,
ERIC SITTIE,

        Defendants.
_____

**ORDER**

Plaintiff Tony L. Kearney ("Kearney"), a former Milwaukee County deputy sheriff, alleges that defendant Milwaukee County terminated his employment on the basis of his race (African American) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. Kearney also alleges that defendants Mark A. Strachota, Eric Sittie, and Milwaukee County Sheriff David A. Clarke, Jr. violated his civil rights in violation of 42 U.S.C. § 1983. The defendants move for summary judgment based upon "principles of preclusion." (Defs.' Mem. 4, Aug. 1, 2006.) For the reasons stated below, the motion will be denied.

**BACKGROUND**

Kearney began working as a deputy sheriff for the Milwaukee County Sheriff's Department in 1992, and he held that position until his termination became final on August 3, 2004. In July and early August of 2003, Kearney was assigned to work as a guard on third-shift in Pod 4-D of the Milwaukee County Criminal Justice

Facility, which at the time, housed both male and female inmates who exhibited high risk or disruptive behavior. During the four times that Mr. Kearney worked on third-shift in Pod 4-D, he was not assigned a partner and was responsible for overseeing that unit by himself.

In August of 2003, a female inmate at the jail facility made allegations that a guard had sexually assaulted her. As a result of the inmate's allegation, the Sheriff's Department conducted an investigation. Defendants Strachota and Sittie, captains in the Sheriff's Department, supervised the investigation. Following the investigation, the Sheriff, defendant Clarke, accused Mr. Kearney of (1) sexually assaulting two of the female inmates in Pod 4-D; (2) orchestrating sex parties during the third-shift where the female inmates would do strip-tease shows for the male inmates on the opposite side of Pod 4-D; (3) passing unauthorized notes between inmates; (4) playing music for inmates; and (5) handing out unauthorized food items to inmates.

Kearney contends that he did not have any sexual contact with inmates in the Milwaukee County Criminal Justice Facility; he did not orchestrate strip-tease parties nor facilitate any of the female inmates to disrobe and allow male inmates to observe them; he did not pass any unauthorized notes between inmates in Pod 4-D; he did not pass any unauthorized food to inmates in Pod 4-D; and while he played the music that he liked at the guard station in Pod 4-D, he did not play any music pursuant to any inmate's request.

On June 29, 2004, the Milwaukee County Personnel Review Board ("PRB") conducted a hearing with respect to Clarke's decision to terminate Kearney's employment. The PRB determined that Kearney violated workplace rules by (1) fraternizing with the inmates by passing notes that were not U.S. mail between inmates; (2) providing personal information about inmates to other inmates; (3) playing music for inmates; (4) opening blinds to allow male inmates to view the female inmates; and (5) spending an inordinate amount of time with a female inmate. (*See* Schoewe Aff. Ex. 2 at 16-17, Aug. 1, 2006.) The PRB was persuaded that Kearney violated workplace rules based upon similar allegations of six inmates who were interviewed separately and independently. (*See id.* at 13.) The PRB sustained Clarke's decision to discharge Kearney based upon the serious nature of the charges, (*see id.* at 16), and issued a written decision on August 3, 2004. Kearney sought certiorari review of the PRB decision from the Milwaukee County Circuit Court.

On September 13, 2004, the circuit court judge to whom Kearney's case had been assigned conducted a scheduling conference during which Kearney's counsel requested that the parties be allowed to conduct additional discovery and present additional evidence in connection with Kearney's termination, specifically focusing on the discriminatory nature of the action taken against Kearney, when compared to disciplinary actions taken against other members of the Department. The judge denied this request. (Bykhovsky Aff. ¶ 6.) At the scheduling conference, Mr. Kearney's counsel also requested that the court conduct a court trial and directly

hear and observe the testimony and evidence, which was originally presented at the PRB hearing. The judge denied this request. (*Id.*) The judge ordered the parties to brief their respective arguments and indicated that the Court would decide the matter upon the record made at the PRB hearing. (*Id.*) On February 2, 2005, the judge affirmed the PRB's decision to discharge Kearney.

On August 5, 2005, Kearney filed this action alleging that Milwaukee County terminated him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and that the individual defendants violated his civil rights in violation of 42 U.S.C. § 1983. Specifically, Kearney alleges that defendants Strachota and Sittie violated his right to equal protection by unfairly investigating him for conduct violations and recommending that he be terminated on the basis of his race. Kearney alleges that defendant Clarke accused Mr. Kearney in the local press of sexually assaulting inmates as well as comparing Kearney to Billy Lee Morford, a convicted child molester, on a Milwaukee radio show. Kearney alleges that Clarke thereby infringed upon a "constitutionally protected liberty interest in his reputation and ability to gain future employment." (Compl. ¶ 38.) Kearney also alleges that Clarke violated his First Amendment rights by retaliating against him based upon protected speech. (Compl. ¶ 39.)

On August 1, 2006, the defendants filed a motion for summary judgment, arguing that the court should give "preclusive effect" to determinations made during the PRB and certiorari proceedings. On September 29, 2006, the defendants filed

an untimely reply brief, and Kearney filed a motion to strike the reply brief as untimely.

**ANALYSIS**

I.  Motion to Strike

The plaintiff's motion to strike will be denied. The defendants' reply brief is untimely without explanation, and the plaintiff's motion to strike the brief has merit. However, the defendants' reply brief largely disputes facts that are not essential to adjudicate the defendant's motion for summary judgment.[1] Therefore, the court is constrained to deny the plaintiff's motion to strike.

II. Motion for Summary Judgment

Summary judgment is appropriate where the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Any doubt as to the existence of a material fact is to be resolved against the moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In this case, there is no genuine issue of material fact, so the court must determine whether the defendants are entitled to judgment as a matter of law.

The PRB and certiorari proceedings

Under Wisconsin law, counties may create "a civil service system of selection, tenure and status" applicable to most county personnel as well as a civil service

---

[1] The defendants take issue with two facts: they dispute that 1) a member of the PRB that presided over Kearney's hearing was simultaneously a member of the Milwaukee County Corporate Counsel's office; and 2) Clarke had ex-parte communications with the PRB regarding Kearney's termination.

-5-

commission to approve uniform provisions concerning salaries, sick leave, disciplinary actions, and other issues. Wis. Stat. § 59.52(8)(a); *State ex rel. Milwaukee County Personnel Review Bd. v. Clarke*, --- N.W.2d ----, 2006 WL 2346338, *6-7 (Wis. Ct. App. Aug. 15, 2006). In Milwaukee County, the civil service commission functions pertaining to discipline and discharge of employees are performed by the PRB. *State ex rel. Iushewitz v. Milwaukee County Personnel Review Bd.,* 500 N.W.2d 634, 635 (Wis. 1993). A department head such as a sheriff may initiate discharge proceedings of an officer or employee by filing charges with the PRB. *See* Wis. Stat. § 63.10(1); e.g. *Clarke*, 2006 WL 2346338, *6-7. The PRB holds a hearing to determine whether or not the charge is well founded and determines whether to suspend, demote, discharge or reinstate the employee. Wis. Stat. § 63.10(2). Specifically, the PRB determines whether there is "just cause" to sustain the charges. Wis. Stat. § 59.52(8)(b); *see also* Wis. Stat. § 59.26(8)(b)5m.[2] In determining whether there is just cause to sustain the charges against the employee, the PRB applies the following standards:

> 1. Whether the employee could reasonably be expected to have had knowledge of the probable consequences of his or her alleged conduct.
>
> 2. Whether the rule or order that the employee allegedly violated is reasonable.

---

[2]The procedures for disciplining law enforcement employees of counties that have not established civil service commissions under Wis. Stat. § 59.52(8)(a) are set forth in § 59.26(8)(b)3. *Eau Claire County v. General Teamsters Union Local No. 662*, 611 N.W.2d 744, 746 n.2 (Wis. 2000). Because Milwaukee County has established a civil service commission, reference to subchapter 59.52 is appropriate. The parties, however, cite to the different, nearly identical subchapters, so the court cites both subchapters for the convenience of the reader.

-6-

> 3. Whether the sheriff, before filing a charge against the employee, made a reasonable effort to discover whether the employee did in fact violate a rule or order.
>
> 4. Whether the effort described under subd. 3. was fair and objective.
>
> 5. Whether the sheriff discovered substantial evidence that the employee violated the rule or order as described in the charges filed against the employee.
>
> 6. Whether the sheriff is applying the rule or order fairly and without discrimination to the employee.
>
> 7. Whether the proposed discipline reasonably relates to the seriousness of the alleged violation and to the employee's record of service with the sheriff's department.

*Id.* A law enforcement employee may appeal an adverse decision to the state circuit court. *See* Wis. Stat. § 59.52(8)(c); *see also* Wis. Stat. § 59.26(8)(b)(6); *State ex rel. Iushewitz,* 500 N.W.2d at 635 (stating that although Wis. Stat. § 63.10 does not provide a procedure for appeal, a party that wishes to appeal the PRB's decision may seek a writ of certiorari in state circuit court). The circuit court decides the following issue: "Upon the evidence is there just cause, as described in par. (b), to sustain the charges against the employee?" Wis. Stat. § 59.52(8)(c). "If the order of the board or the commission is reversed, the accused shall be immediately reinstated and entitled to pay as though in continuous service. If the order of the board or the commission is sustained, it shall be final and conclusive." *Id.*

Before the PRB, Kearney argued, among other things, that his discharge was discriminatory. (Defendants' Proposed Findings of Fact ("DPFOF") ¶ 9.) In its August 3, 2004 written decision, however, the PRB made no findings of fact or conclusions of law regarding Kearney's allegation of discrimination. (Plaintiff's

Response to DPFOF ¶ 9; Schoewe Aff. Ex. 2, Aug. 1, 2006.) In the certiorari proceeding, Kearney argued, among other things, that his discharge was discriminatory. (DPFOF ¶ 9; Schoewe Aff. Ex. 3 at 15-16, Aug. 1, 2006.) Specifically, Kearney argued that 10 other deputies were accused of similarly grave misconduct, including one deputy who was accused of nearly identical charges, but were not discharged. (*See id.*) The state circuit court, however, did not discuss the charges or punishment involving the other 10 deputies and addressed Kearney's allegation of discrimination in one sentence: "The discipline imposed upon Kearney was reasonable under the circumstances and was not unfairly imposed or discriminatory." (Schoewe Aff. Ex. 5 at 10, Aug. 1, 2006.) Kearney did not couch his allegations of discrimination as a Title VII or § 1983 claim; rather, Kearney argued that the PRB did not consider comparative disciplinary situations in its decision to discharge him, (DPFOF ¶ 9; Schoewe Aff. Ex. 3 at 15-16, Aug. 1, 2006), an argument based upon the sixth standard found in Wis. Stat. § 59.52(8)(b). At no point during the PRB or certiorari proceedings did Kearney raise the issue of whether Clarke violated his civil rights by making disparaging comments to the local media or by discharging him in retaliation for protected speech.

Claim preclusion and issue preclusion

The court's first task is to identify the nature of the defendants' argument. The defendants move for summary judgment based upon "principles of preclusion," (Defs.' Mem. 4, Aug. 1, 2006), but they do not state explicitly whether they rely upon

the doctrine of claim preclusion or issue preclusion.[3] For the sake of completeness, the court considers whether either doctrine applies to Kearney's claims or issues.

The preclusive effect of a state judicial decision depends upon state rather than federal law. *U.S. Gypsum Co. v. Indiana Gas Co.,* 350 F.3d 623, 628 (7th Cir. 2003) (citing 28 U.S.C. § 1738). Under Wisconsin law, "claim preclusion provides that a final judgment on the merits in one action bars parties from relitigating any claim that arises out of the same relevant facts, transactions, or occurrences." *Kruckenberg v. Harvey*, 694 N.W.2d 879, 884 (Wis. 2005); *see also DePratt v. West Bend Mutual Ins. Co.*, 334 N.W.2d 883, 886 (Wis. 1983) (adopting the transactional approach set forth in the Restatement (Second) of Judgments § 24 (1982) to determine whether two suits involve the same cause of action). Claim preclusion bars the subsequent litigation of matters "which were litigated or which might have been litigated in the former proceedings." *DePratt*, 334 N.W.2d at 885. Claim preclusion requires: (1) identity between the parties or their privies in the prior and present suits; (2) a final judgment on the merits by a court with jurisdiction; and (3) identity between the causes of action in the two suits. *Northern States Power Co. v. Bugher*, 525 N.W.2d 723, 728 (Wis. 1995). On the other hand, issue preclusion "foreclos[es] relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in a prior action" and does not require identity between the causes of action. *Id.* at 727; Restatement (Second) of Judgments § 27

---

[3] Under Wisconsin law, the term claim preclusion replaces res judicata; the term issue preclusion replaces collateral estoppel. *Northern States Power Co. v. Bugher,* 525 N.W.2d 723, 727 (Wis. 1995). "Although they are related, the two doctrines are 'independent preclusion concepts.'" *Id.* (citation omitted).

(1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."). Unlike claim preclusion, issue preclusion only applies if the issues were actually litigated. Additionally, issue preclusion involves a "fundamental fairness" analysis whereby the court considers a variety of factors such as whether the issue of law involved two distinct claims, whether differences in the quality or extensiveness of the proceedings warrant relitigation of the issue, and whether the party seeking preclusion had a lower burden of persuasion in the first proceeding. *Lindas v. Cady*, 515 N.W.2d 458, 463-64 (Wis. 1994) (citing *Michelle T. v. Crozier*, 495 N.W.2d 327, 330-31 (Wis. 1993)).

Claim preclusion does not bar Kearney from litigating his Title VII and § 1983 claims in this action because claim preclusion does not apply to the PRB proceeding or to the certiorari review. *See Wilhelm v. County of Milwaukee,* 325 F.3d 843, 845-46 (7th Cir. 2003) (citing *Hanlon v. Town of Milton*, 612 N.W.2d 44, 48 (Wis. 2000)). Kearney was not required to raise his Title VII or § 1983 claims before the PRB or to the state circuit court in his petition for certiorari. *Id.* Citing *Hanlon*, the Seventh Circuit reasoned that a petition for certiorari under Wis. Stat. ch 68 is a limited form of review that does not bar, on claim preclusion grounds, a subsequent § 1983 suit in federal court. *Wilhelm*, 325 F.3d at 845-46. Similarly, in the present action, the certiorari review that Kearney sought in state court is also a limited form of review, *see* Wis. Stat. § 59.52(8)(c), that does not bar his Title VII or

§ 1983 claims. Wis. Stat. § 59.52(8)(c) requires the plaintiff to appeal the PRB's decision within 10 days after the PRB's order is filed and does not allow the plaintiff to seek compensatory damages or demand a jury trial. *See id.* *Hanlon* relied upon these limitations of a certiorari proceeding in concluding that a plaintiff was not required to join a § 1983 claim in a certiorari proceeding. *See Hanlon*, 612 N.W.2d at 47-50.

Although *Wilhelm* specifically discusses only claim preclusion, *Wilhelm* and *Hanlon* show that issue preclusion does not apply to the PRB or certiorari proceedings. *Hanlon* recognized a distinction between asserting an equal protection argument in an effort to establish that a municipal determination is unreasonable or arbitrary and, on the other hand, asserting an equal protection claim for money damages under § 1983. S*ee Hanlon,* 612 N.W.2d at 47-48. Although the equal protection arguments may be identical, the certiorari proceeding has no preclusive effect, be it on claim or issue preclusion grounds. Similarly, there is a difference between asserting race discrimination in an effort to show that there is no just cause for the discharge, as Wis. Stat. § 59.52(8)(b)6 permits, and, on the other hand, asserting a Title VII claim for damages. If the court were to apply issue preclusion to the PRB or certiorari proceedings, Wisconsin Statute § 59.52(8)(b)6 would force parties to litigate prematurely any factual disputes underlying potential Title VII claims or remain silent as to that standard, and litigants could circumvent the holdings of *Wilhelm* and *Hanlon* merely by re-labeling their argument.

Alternatively, issue preclusion does not apply in this case because Kearney did not actually litigate issues underlying his Title VII and § 1983 claims during the PRB or certiorari proceedings. The defendants have not shown that Kearney raised, during the PRB or certiorari proceedings, the issue of whether Clarke violated his civil rights by making disparaging comments to the local media or by discharging him in retaliation for protected speech. *See Amber J.F. v. Richard B.*, 557 N.W.2d 84, 87 (Wis. Ct. App. 1996) (stating that the party who seeks the benefit of issue preclusion bears the burden of establishing that issue preclusion should be applied). Additionally, Kearney's allegations of race discrimination were not determined by the PRB or the state circuit court. The PRB did not address Kearney's allegations at all, and the state circuit court made no factual determinations regarding the other deputies that allegedly received lighter punishment for similarly grave misconduct (e.g. were the deputies similarly situated to Kearney, were they treated more favorably). The state circuit court merely concluded without any analysis that Kearney's discharge was not discriminatory. This conclusion of discrimination is not a factual determination to which issue preclusion attaches. *See, e.g., U.S. Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 629 (7th Cir. 2003) (finding that issue preclusion applies to "concrete issues," not "lofty . . . level[s] of generality").

Finally, issue preclusion would not apply in this case because Kearney did not receive "a fair opportunity procedurally, substantively and evidentially" to pursue his Title VII and § 1983 claims. *Amber J.F.*, 557 N.W.2d at 88. Kearney's attorney testifies that he requested leave to take discovery and present additional evidence

-12-
Case 2:05-cv-00834-WEC    Filed 10/30/06    Page 12 of 13    Document 30

of discrimination in the certiorari proceeding but that his request was denied. (Plaintiff's Proposed Finding of Fact ¶ 21; Bykhovsky Aff. ¶ 6.)[4] Also, as the court has already noted, Kearney could not seek compensatory damages or demand a jury trial. Therefore, the court finds that Kearney did not have a full and fair opportunity to litigate Title VII or § 1983 claims during the PRB or certiorari proceedings.

The court concludes that neither claim preclusion nor issue preclusion bar Kearney from litigating claims or issues in this action.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion to strike defendants' reply brief be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin this 30th day of October, 2006.

BY THE COURT:

s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Court

---

[4]The court does not imply that the circuit court judge erred by not allowing discovery of evidence of discrimination; the ruling may reflect the limited scope of the certiorari review. However, the inability to conduct discovery demonstrates that Kearney did not have a full and fair opportunity to litigate his Title VII claim in the certiorari proceeding.

The defendants dispute that discovery was limited in the certiorari proceeding. In their reply brief, the defendants argue that "[n]o record exists in the court record to verify this claim," (Defs.' Reply Br. 2), but the plaintiff's proposed finding of fact is supported by admissible evidence, Bykhovsky's affidavit, whereas the defendants' above-quoted assertion is not. Additionally, the plaintiff's proposed finding is unopposed, and the court finds that there is no material issue as to that fact. *See* Civil L.R. 56.2(e) ("In deciding a motion for summary judgment, the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out.")